UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

PEDRO ROBLES,                                    :

                              Petitioner,        :        **AMENDED**
                                                          **REPORT AND**
                                                          **RECOMMENDATION**
             - against -                         :        **TO THE HONORABLE**
                                                          **JED S. RAKOFF**
BRIAN FISCHER, Superintendent,                   :
Sing Sing Correctional Facility,                          05 Civ. 3232 (JSR)(FM)
                                                 :
                              Respondent.         :
--------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge.

I.       Introduction

         Petitioner Pedro Robles ("Robles") brings this pro se habeas corpus

petition pursuant to 28 U.S.C. § 2254 to challenge his conviction on one count of Murder

in the Second Degree and two counts of Assault in the First Degree in Supreme Court,

New York County.  (See Pet. ¶¶ 1, 5; Ans. ¶ 2).  After Robles pleaded guilty to these

charges, Justice Charles J. Solomon sentenced Robles on May 30, 2000, to a term of

fifteen years to life on the murder count and concurrent fifteen-year terms on the assault

counts.  (Ans. ¶ 2).

         In his petition ("Pet." or "Petition"), Robles alleges that his rights under the

Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were violated

because his attorney provided ineffective assistance in connection with his guilty plea.

(Pet. ¶ 12).  For the reasons that follow, the Petition should be denied.  Additionally,

Robles should be denied a certificate of appealability because he has failed to make the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2).

II.   Background

   A.   Factual Background

      Shortly before 9 p.m. on June 5, 1999, Robles drove his white flatbed pickup truck from Riverside Drive onto West 72nd Street in Manhattan and continued eastbound in the opposing lane of traffic at the rate of approximately sixty to seventy miles per hour.  (H. 39-40, 46; P. 8-10).[1]  At the time, Robles was under the influence of alcohol, marijuana, and PCP.  (T. 9; P. 9; S. 14).  Robles went through a red light at the intersection of West 72nd Street and Broadway, striking and seriously injuring two pedestrians who were in the crosswalk.  (H. 196; S. 4-5, 8).  He then struck a car traveling on Broadway, killing the driver.  (H. 50-51; P. 10; S. 14).  Eventually, Robles was forced to stop after he crashed his truck into other cars on the southeast corner of West 72nd Street and Broadway.  (H. 168).  When police officers reached Robles, he was attempting to back up and flee.  (Id. at 56).  As one of the officers handcuffed Robles, he spit at the officer.  (Id. at 57).

_____

   [1]   "H." refers to the transcript of the suppression hearing.  "T." refers to the transcript of the pretrial proceedings on the morning of May 10, 2000.  "P." refers to the transcript of Robles' guilty plea on the afternoon of May 10, 2000.  "S." refers to the minutes of his sentencing on May 30, 2000.

On June 18, 1999, the grand jury returned an indictment in which Robles was charged with Murder in the Second Degree, Vehicular Manslaughter in the Second Degree, two counts of Assault in the First Degree, two counts of Assault in the Second Degree, two counts of Vehicular Assault in the Second Degree, Reckless Endangerment in the First Degree, and Driving While Intoxicated. (See Resp't's Br. at 2).

B.     Suppression Hearing

On March 29, 2000, the state court began a hearing on Robles' motions to suppress certain physical evidence, his statements to the police, and several pretrial identifications of him. Before the first witness was called, Robles' counsel told Justice Solomon that the People would agree to the imposition of concurrent sentences on the first degree assault counts if Robles pleaded guilty to those counts and the second degree murder count. (H. 16). The prosecutor confirmed this discussion, but cautioned that "after this hearing I will no longer be holding that position. My position will be that there are two separate and apart assaults in the first degree which I believe carry a maximum term of 15 years to life in addition to the murder in the second degree." (Id. at 16-17). Neither the court nor defense counsel responded to this assessment of Robles' sentencing exposure. (Id. at 17). Nonetheless, Justice Solomon emphasized the prosecutor's key point for Robles, explaining that the prosecutor would "take a different position" and make "no bargains and no promises of concurrent sentence[s]" after the hearing. (Id. at 19, 21).

Justice Solomon then asked defense counsel whether Robles was interested in a disposition of the case. After counsel indicated that Robles had not expressed any such interest prior to the receipt of the <u>Rosario</u> material a week earlier, the Justice suggested that he pursue this subject with his client. Robles then interjected, "I can understand everything you are saying, your Honor. But this was an accident." (<u>Id.</u> at 19). After conferring with Robles, defense counsel informed the court that his client would not plead guilty and was "ready to go forward." (<u>Id.</u> at 20-21).

On April 26, 2000, Justice Solomon issued a written decision denying Robles' suppression motions. (<u>See</u> Ans. App. Ex. B).

C.    Pretrial Proceedings

On the morning of May 10, 2000, just before jury selection, Justice Solomon observed that there had been extensive discussions regarding a possible plea over the past several weeks. (T. 2-3). Defense counsel indicated that Robles had requested "a flat thirteen years," but that the prosecutor would require him to plead guilty to charges which included the second degree murder count that carried a mandatory minimum sentence of fifteen years. (<u>Id.</u> at 3-5). In exchange for a guilty plea, however, the prosecutor agreed that neither she nor the victims nor their families would ask the court to impose a particular sentence. (<u>Id.</u> at 4-6).

The prosecutor also noted that if the case proceeded to trial, she would not "remain[ ] silent" on sentencing, nor would the victims be prevented from addressing that topic. (Id. at 6). The prosecutor added:

> I feel that . . . this is an after trial, actually even before trial, my feeling had always been that [this] is [a] twenty-five years to life case.
>
> Twenty-five years, you know, to life is what I have gotten almost routinely on homicides after trial. Added to that two other victims whose lives are ruined.

(Id. at 6-7). The prosecutor also indicated that she did not believe that Robles could prevail on his defense of carbon monoxide intoxication since "we all know what drugs he had on board." (Id. at 8). Justice Solomon noted that he would impose the minimum fifteen-year sentence if Robles pleaded guilty, but that there was a possibility that he might sentence Robles to consecutive sentences if Robles were convicted after a trial because "[t]hese are separate victims, separate acts." (Id. at 9-10).

Robles then addressed the court directly, stating that he was only willing to plead guilty to "thirteen years for Criminally Negligent Homicide" because he was not a murderer and did not intend to hurt anyone. (Id. at 11). Robles opined further that if he had been permitted to testify before the grand jury, he probably would only have been indicted on that charge, which carried a lesser sentence. (Id.). He also told the court for the first time, "I'm not being represented properly, Your Honor. My rights have not been, correct. I can't take it to trial, I want to get my own attorney." (Id. at 13-14). As he

explained, defense counsel allegedly had advised him inaccurately that he would not be indicted for murder. Robles added that if he had known he would be charged with murder, he would have testified before the grand jury, which then would have indicted him only on the lesser charge of "vehicular homicide," to which he could have pleaded guilty. (Id. at 14). Finally, Robles suggested that the court was attempting to "railroad" him. (Id. at 15).

After defense counsel requested that Robles again be asked whether he wanted to plead guilty, Justice Solomon responded, "I'm not here to brow beat him and to twist arms and to try to force a disposition here. I don't do that. I'm not going to do it here." (Id. at 17-18). The Justice also noted that defense counsel had made approximately twenty appearances on behalf of Robles since July 20, 1999, during which Robles had never expressed any dissatisfaction with his services or requested another attorney. (Id. at 18-19). For that reason, the Justice rejected Robles' request for the appointment of new counsel. (Id. at 19).

Justice Solomon then asked Robles for his position regarding a plea. (Id. at 20). After conferring with defense counsel, Robles reaffirmed that he did not want to plead guilty. (Id. at 23). The court then proceeded to a discussion of pretrial matters and held a Sandoval hearing. (Id. at 24-105).

D.    <u>Plea</u>

Justice Solomon delayed jury selection until after lunch so that Robles could talk to his counsel without undue pressure.  (<u>Id.</u> at 99-100).  When court reconvened that afternoon, Robles' attorney informed the court that he had participated in a "very, very long conference" with Robles, who, "upon further reflection," wanted to change his plea.  (P. 2).  After the court asked whether that was correct, Robles responded, "Yes."  (<u>Id.</u>).  The following exchange then took place:

> COURT:    Just so we're clear on the record, the People's right under our law in this State is to have the defendant enter a plea to every count if they insisted in the indictment.  The law is pretty clear on that but . . . what would you seek as far as pleas here, because I am promising him the minimum sentence here[?]
>
> PROSECUTOR:    I realize that Judge, I will insist that he plead guilty of course to the top count which is Murder in the Second Degree, as well as each one of the assaults in the First Degree.
>
> COURT:    That's counts three, and four.
>
> PROSECUTOR:    Yes, I assume that this court made it clear that Mr. Robles is waiving his right to appeal.

(<u>Id.</u> at 3).

Defense counsel stated that he had explained the waiver of appellate rights to Robles and that they had discussed the terms of the plea earlier that day.  (<u>Id.</u> at 4).  After defense counsel noted that the plea was occurring while the case was in a "trial

posture," Justice Solomon noted, "in fairness," that "a lot of information was revealed today, that was not [previously] known to the defense." (Id. at 5). Defense counsel agreed, commenting that one of the factors leading to Robles' decision to plead guilty was the existence of a witness who would testify that the passenger window of Robles' truck was open while he was driving, a fact which was inconsistent with his defense of "carbon monoxide intoxication." (Id.). Having reviewed all of the evidence and having "lived with [the] case for a very long time," defense counsel opined that there was a "great likelihood" that Robles would be convicted of "the top count of the indictment," i.e., the second degree murder count, if he went to trial. (Id. at 6).

After being placed under oath, Robles confirmed that he wished to plead guilty to the Murder in the Second Degree count and the two Assault in the First Degree counts. (Id. at 7-8). Robles further assured the court that he was doing so "voluntarily of [his] own free will" after having talked to his attorney. (Id. at 8). Justice Solomon then explained the charges to Robles, who admitted that he drove his pickup truck at a rate of sixty to seventy miles an hour in the wrong lane of traffic after having smoked a "Philly blunt" containing pot and PCP. (Id. at 8-10). Robles also admitted that he had caused the death of one victim and serious physical injuries to two other victims. (Id. at 10-11). After the court repeated the key terms of the plea arrangement, including his waiver of the right to appeal, Robles confirmed that he had spoken with defense counsel and understood them. (Id. at 11-12). Robles further acknowledged that he understood that

"once the plea is entered and accepted that it's not going to [be] withdrawn."  (Id. at 15-16).  Finally, Robles confirmed that he understood that, by pleading guilty, he was giving up his right to a jury trial, the right to confront and cross-examine witnesses, and the right to remain silent at trial.  (Id. at 16).

     E.    <u>Sentencing</u>

Robles was sentenced on May 30, 2000.  (S. 1).  At that time, defense counsel conceded that "while under the influence of PCP [Robles] got into his truck and drove downtown in a reckless manner . . . [,] killing one person and inflicting serious physical injury to two others."  (Id. at 14).  Defense counsel nevertheless suggested that Robles was an addict who had "no intent to harm anyone" and therefore should not be sentenced to "more than the minimum."  (Id.).  When he was afforded an opportunity to speak, Robles apologized and expressed "remorse for what happened on June 5th."  (Id. at 17).  Robles also asked the victims for forgiveness.  (Id.).

Prior to imposing sentence, Justice Solomon noted that the negotiated plea provided a level of certainty that a trial could not, as well as closure for the victims and their families.  (Id. at 19-20).  As the Justice further explained,

> by this plea to murder it is certain that fifteen years as a minimum will be served in state prison.  And, also the waiver of any [a]ppellate rights.  That means there can be no appeal in this case.  No appeal from the sentence.  No appeal from any part of the judgment of conviction.  Again, that's part of the certainty.

(Id. at 20).  Justice Solomon then sentenced Robles to the mandatory minimum sentence of fifteen years to life on the murder count and concurrent fifteen-year terms on the assault counts.  (Id. at 21).

F.    Subsequent Procedural History

In his brief to the Appellate Division, First Department, Robles' court-appointed appellate counsel claimed, as Robles does here, that his plea of guilty was unknowing and involuntary because he was erroneously informed that he could be sentenced to consecutive terms on the murder and assault charges if convicted after a trial.  (See Ans. App. Ex. A).  The brief submitted on Robles' behalf also suggested that his counsel had not disputed these allegedly mistaken representations concerning his sentencing exposure.  (Id. at 7).  In addition, Robles submitted a pro se supplemental brief to the Appellate Division, in which he claimed that the evidence that he had consumed alcohol and drugs was insufficient to support his plea agreement, and that the trial court was required to conduct a hearing to determine his mental competency.  (Id. Ex. B).  On March 9, 2004, the Appellate Division unanimously affirmed Robles' conviction.  See People v. Robles, 5 A.D.3d 180 (1st Dep't 2004).  In its decision, insofar as relevant here, the Appellate Division stated that:

> Defendant's assertion that his plea was not knowing and
> voluntary because he was allegedly misinformed about the
> possibility of receiving consecutive sentences in the event of
> convictions after trial for murder and assault is unpreserved
> since he never sought to withdraw or vacate his plea (see
> People v. Lopez, 71 N.Y.2d 662 . . .), and we decline to

> review it in the interest of justice. Were we to review this
> claim, we would find that the record does not establish that
> defendant's plea was the product of any misapprehension as
> to his sentencing exposure . . . , and we would further find
> that defendant received effective assistance of counsel.

Id. at 180-81.

By letter dated April 1, 2004, Robles sought leave to appeal the Appellate

Division's decision to the Court of Appeals. (See Ans. App. Ex. E). In that letter, his

counsel requested only that the Court of Appeals review Robles' claim that his guilty plea

was unknowing and involuntary because of the ineffective assistance of his trial lawyer.

On May 26, 2004, the New York Court of Appeals summarily denied that application.

People v. Robles, 2 N.Y.3d 805 (2004) (table). Robles did not file a petition for a writ of

certiorari. (See Pet. ¶ 9(h)).

G.    Habeas Petition

The Petition is dated March 7, 2005, and was timely received by the Pro Se

Office of this Court on March 25, 2005. (See Docket No. 2). The following month, Your

Honor referred the matter to me for a Report and Recommendation. (See Docket No. 3).

III.    Discussion

A.    Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously

determined in state court. Herrera v. Collins, 506 U.S. 390, 401 (1993). Instead, a state

prisoner seeking habeas relief under § 2254 must show by a preponderance of the

11

evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner thus has the burden of proving, by a preponderance of the evidence, that his rights have been violated. See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides, in part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000), the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'" "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly

established federal law was objectively unreasonable." Id. at 409. This standard does not require that reasonable jurists would all agree that the state court was wrong. Id. at 409-10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Stinson, 229 F.3d. at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) also authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Finally, to the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that: "a determination of a factual issue by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Williams, 529 U.S. at 389.

B.      Procedural Default

Robles fully exhausted his ineffective assistance claim by asserting it before the Appellate Division and seeking leave to appeal further to the Court of Appeals. Nonetheless, even when a petitioner presents a colorable constitutional claim that is fully

13

exhausted, a federal court is precluded from reviewing it if the state court's prior denial of the claim rested on an adequate and independent state ground. E.g., Lee v. Kemna, 534 U.S. 362, 375 (2002); Harris v. Reed, 489 U.S. 255, 262 (1989); Wainwright v. Sykes, 433 U.S. 72, 81 (1971). A procedural default qualifies as such an adequate and independent state ground, Harris, 489 U.S. at 262, unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996); accord Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000).

When a state court relies on a state procedural bar, the petitioner is precluded from seeking habeas relief even though the state court has ruled in the alternative on the merits of his federal claim. Glenn, 98 F.3d at 724. In determining whether a claim may be heard, courts "apply a presumption against finding a state procedural bar and 'ask not what we think the state court actually might have intended but whether the state court plainly stated its intention.'" Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) (quoting Stinson, 229 F.3d at 118). However, when the last court to issue a reasoned decision relies on a state procedural bar, the court will presume that subsequent decisions rejecting the claim without discussion relied on the bar and did not silently consider the merits. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

Here, the Appellate Division was the last state court to issue a reasoned decision concerning Robles' case. In that decision, the Appellate Division held that Robles' challenge to his guilty plea was unpreserved because he did not seek to withdraw it or to vacate the judgment of conviction prior to filing his appeal. Robles, 5 A.D.3d at 180-81. The court's express reliance on Robles' failure to preserve his claim constitutes an adequate and independent state ground for its denial. See Harris, 489 U.S. at 265 n.12; Glenn, 98 F.3d at 724-25.

Accordingly, Robles is barred from challenging his guilty plea on habeas review if the state rule on which the Appellate Division relied was "firmly established and regularly followed." See Cotto v. Herbert, 331 F.3d 217, 239-41 (2d Cir. 2003). That a defendant's challenge to his guilty plea is unpreserved unless he first moves to withdraw his plea or vacate the judgment is such a rule. See Robinson v. Perlman, No. 02 Civ. 8709, 2005 U.S. Dist. LEXIS 5058, at *16-18 (S.D.N.Y. Mar. 25, 2005) (Report & Rec. of K. Fox, Mag. J.); People v. Lopez, 71 N.Y.2d 662, 665-66 (1988); People v. Claudio, 64 N.Y.2d 858, 858-59 (1985); People v. Pellegrino, 60 N.Y.2d 636, 637 (1983); People v. Bell, 47 N.Y.2d 839, 840 (1979); People v. Warren, 47 N.Y.2d 740, 741 (1979).[2]

_____

[2]    On February 21, 2008, the Appellate Division, Third Department, held that it "will no longer follow" the rule that a defendant must move to withdraw his plea or vacate his conviction in order to challenge a guilty plea. People v. Lewis, __ N.Y.S.2d __, 2008 WL 450375 (3d Dep't Feb. 21, 2008). The Third Department based its decision on a broad interpretation of People v. Louree, 8 N.Y.3d 541 (2007), a case in which the Court of Appeals suggested that a defendant may challenge his guilty plea for the first time on direct appeal in the "rare case" where the error is clear on the face of the record. Id. at 545. Although the Third

(continued...)

Robles therefore cannot challenge the voluntariness of his plea in this forum

unless he can demonstrate both cause for his default and actual prejudice, or that the

failure to consider his claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.  To establish cause for a default, a petitioner must adduce

"some objective factor external to the defense" which explains why he did not raise the

claim previously.  Murray v. Carrier, 477 U.S. 478, 488 (1986); Gonzalez v. Sullivan, 934

F.2d 419, 422 (2d Cir. 1991).  The circumstances giving rise to cause include (a)

interference by government officials which makes compliance impracticable, (b)

situations in which the factual or legal basis for a claim was not reasonably known by

counsel, and (c) ineffective assistance of counsel.  See Murray, 477 U.S. at 488; Bossett

v. Walker, 41 F.3d 825, 829 (2d Cir. 1994).  A showing of prejudice requires a petitioner

to demonstrate that the failure to raise the claim previously had a substantial injurious

effect on the petitioner's case such that he was denied fundamental fairness.  Reyes v.

New York, No. 99 Civ. 3628, 1999 U.S. Dist. LEXIS 17907, at *8 (S.D.N.Y. Nov. 22,

---

[2](...continued)
Department is the only jurisdiction that allows any defendant challenging his guilty plea to raise
that claim in the first instance on appeal, the First Department apparently has also begun to
backtrack from the requirement that a defendant first seek relief before the trial court.  See Joel
Stashenko, Panel Drops Preservation in Appeals Waiver Cases, N.Y.L.J., Feb. 22, 2008, at 1-2.
But see People v. Blackwell, 41 A.D.3d 121 (1st Dep't 2007) (relying on requirement).
However, the requirement that a defendant first move before the trial court was firmly
established and regularly followed by the Court of Appeals and all four appellate departments at
the time that Robles' conviction became final.

1999).  To establish a fundamental miscarriage of justice, a petitioner must demonstrate that he is "actually innocent."  Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).

In his Petition, Robles argues that his trial counsel was ineffective because he erroneously advised Robles that he faced consecutive sentences if convicted after a trial.  (Pet. ¶ 12).  If there were a factual basis for this claim, it might give rise to cause for his procedural default.  Nevertheless, as set forth below, Robles is unable to show prejudice.  He also has not shown that he is actually innocent of the charges arising out of his reckless driving.  Robles is therefore barred from attacking the voluntariness or sufficiency of his guilty plea in this habeas proceeding.

C.      Merits

Robles would not be entitled to habeas relief even if his claims with respect to his guilty plea did not suffer from an insurmountable procedural obstacle.

A defendant who pleads guilty "waives a number of fundamental constitutional rights."  Spence v. Sup't, Great Meadow Corr. Facility, 219 F.3d 162, 167 (2d Cir. 2000).  The Due Process Clause of the Fourteenth Amendment to the United States Constitution consequently requires that a guilty plea be entered "voluntarily, knowingly, and intelligently."  Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005); see also Heron v. New York, No. 98 Civ. 7941, 1999 U.S. Dist. LEXIS 18907, at *12 (S.D.N.Y. Dec. 8, 1999) ("A plea is 'intelligent' and 'voluntary' when a defendant had the advice of counsel, understood the consequences of his plea and the plea was not physically or

mentally coerced."); Gomez v. Duncan, No. 02 Civ. 0846, 2004 U.S. Dist. LEXIS 898, at

*58 (S.D.N.Y. Jan. 27, 2004) ("A plea is involuntary where the defendant did not have

'knowledge of the nature of the constitutional protections he will forgo by entering his

plea.'"). Although many of the rights that a defendant waives through a guilty plea are

federal constitutional rights, Boykin v. Alabama, 395 U.S. 238, 243 (1969), a federal

court reviewing a state prisoner's habeas petition must defer to the determination of the

state court as to the facts surrounding that plea. Ayala v. New York, No. 03 Civ. 2762,

2004 U.S. Dist. LEXIS 4135, at *16 (S.D.N.Y. Mar. 16, 2004) (citing 28 U.S.C.

§ 2254(e)(1)). Moreover, the statements made by a defendant during his guilty plea

allocution "carry a strong presumption of verity . . . and are generally treated as

conclusive in the face of the defendant's later attempt to contradict them." Adames v.

United States, 171 F.3d 728, 732 (2d Cir. 1999) (citations and internal quotation marks

omitted).

  In this case, Robles contends that his guilty plea was unknowing and

involuntary because he was erroneously advised that he could be sentenced to consecutive

terms. He argues that, "because [his victims] were injured as a result of a single act,

concurrent terms were required by" Section 70.25(2) of the New York Penal Law

("Section 70.25(2)"). (Pet. ¶ 12).

  Courts apply the two-part standard set forth in Strickland v. Washington,

466 U.S. 668, 688 (1984), to evaluate ineffective assistance of counsel claims in the

18

context of guilty pleas.  Hill v. Lockhart, 474 U.S. 52, 57-58 (1985).  Thus, a defendant

must first show that his "counsel's representation fell below an objective standard of

reasonableness."  Strickland, 466 U.S. at 687-88.  In that regard, there is a "strong

presumption that [a lawyer's] conduct falls within the wide range of reasonable

professional assistance."  Id. at 689.  To meet the second part of the Strickland test,  a

defendant must show that "there is a reasonable probability that, but for counsel's errors,

he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474

U.S. at 59.  In connection with both requirements, courts consider such factors as "[t]he

likelihood that an affirmative defense [would have been] successful at trial and an

assessment of the probable increase or reduction in sentence relative to the plea if the

defendant [would have proceeded] to trial."  Panuccio v. Kelly, 927 F.2d 106, 109 (2d

Cir. 1991).

     Robles clearly has failed to make the requisite showings here.  At the outset,

Robles' ineffective assistance argument turns on his reading of Section 70.25(2), which

provides that sentences "must run concurrently" when more than one sentence is imposed

for multiple offenses "committed through a single act or omission."  N.Y. Penal Law

§ 70.25(2) (McKinney's 2004).  Whether multiple offenses spring from a "single act" or

distinct acts is determined by whether the offenses are legally separate and whether each

offense is accomplished by a separate "bodily movement."  Id. § 15.00(1) (McKinney's

2004); People v. Brown, 80 N.Y.2d 361, 364 (1992); People v. Day, 73 N.Y.2d 208, 211

(1989).  Robles contends that the death of one of his victims and the injuries sustained by the two others resulted from his single act of driving his truck.  (Pet. ¶ 12(c)(1)).  The Respondent counters that consecutive sentences were properly imposed because Robles struck and killed the driver of the vehicle in a different location than, and only after, he hit the pedestrians.  (Resp't's Br. at 29-30).

The Respondent is correct.  Thus, in People v. Shabaz, 173 A.D.2d 498 (2d Dep't 1991), a case strikingly similar to this one, a defendant under the influence of cocaine sped away from a crime scene.  At one point, while he was attempting to squeeze his vehicle through two rows of stopped cars, he "ran over a pedestrian, killing him, and struck another car, injuring its driver, before coming to a stop in the middle of the intersection." Id. at 498.  On these facts, the Appellate Division, Second Department, held that it was proper to impose consecutive sentences for depraved indifference murder and second degree assault, charges similar to those here.  See id. at 500.  As the court explained, "[w]hile the defendant hit both victims with the car he was driving, there were nevertheless two separate 'acts' or collisions resulting in separate injuries to the two victims." Id.

Moreover, even if concurrent sentences were required and Robles were able to show that he would have insisted on a trial had he known that, he still would not be able to establish any prejudice.  Throughout the numerous proceedings in state court, Robles indicated that he intended to rely on a defense of carbon monoxide intoxication at

trial.  (See, e.g., T. 8).  However, the People had a witness who would testify that he had "begged" Robles not to drive before the accident "[b]ecause he was so altered by drugs and alcohol."  (Id. at 8-9).  As Robles knew from the suppression hearing, there were also several witnesses who would testify that he appeared to be under the influence of alcohol or drugs.  (H. 58-59, 124, 188-89).  The testimony of these witnesses was further supported by toxicology reports which showed that Robles' judgment was impaired at the time of the accident.  (T. 31-32).  Finally, the day before Robles entered his guilty plea, the People advised his attorney of the existence of a witness who would testify that the passenger side window of Robles' truck was open immediately before the accident.  As Robles' counsel explained to the court at the time that Robles changed his plea, this was "probably the last factor[]" that convinced him to plead guilty.  (P. 5).

In light of this overwhelming evidence of guilt, Robles simply cannot establish a reasonable probability that he would have been acquitted had his case been tried.  The record is also devoid of anything which suggests that Robles would have received a lesser sentence had he proceeded to trial.  Indeed, as Justice Solomon indicated during the course of pretrial proceedings, had Robles insisted on pursuing his plainly frivolous defense, it is likely that he would have been sentenced to a longer aggregate term than he ultimately received.  (T. 9-11, 23).

Finally, the record confirms that Robles' counsel made appropriate pretrial motions, negotiated on Robles' behalf with the prosecutor, secured a highly favorable

plea arrangement, explained Robles' options to him on numerous occasions, and correctly advised him that his interests were best served by pleading guilty. His services consequently were more than adequate.

Thus, even if Robles' ineffective assistance of counsel claim were not procedurally barred, it plainly would fail on the merits.

## IV.    Conclusion

For the foregoing reasons, Robles' habeas petition should be denied. Furthermore, because Robles has not made the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

## V.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have ten (10) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff and to my chambers at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Rakoff. The failure to

file these timely objections will result in a waiver of those objections for purposes of

appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474

U.S. 140 (1985).

Dated:     New York, New York
             February 22, 2008

                                       FRANK MAAS
                               United States Magistrate Judge

Copies to:

Pedro Robles [Pro Se]
# 00-A-3231
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York  10562

Alice Wiseman, Esq.
Assistant District Attorney
District Attorney of New York County
One Hogan Place
New York, New York 10013
(212) 335-9288 (fax)